ASHLEY C. MORRILL and others *vs.* SAINT ANTHONY FALLS
WATER-POWER COMPANY.

October 17, 1879.

Riparian Owners—Use of Water.—The riparian owner upon a navigable stream may use the water flowing past his land for any purpose, so long as he does not impede the navigation, in the absence of any counter claim by the state or United States.

Same—St. Anthony Falls W. P. Co.—The act incorporating the Saint Anthony Falls Water-Power Company does not authorize it to appropriate the water-power opposite the lands of any other riparian owner.

Same—Injunction—Estoppel.—For an unlawful interference with the right of a riparian owner to use the water flowing past his land, injunction is a proper remedy. Mere delay of such an owner to assert his rights does not work an estoppel.

Findings of fact of the court below sustained.

Appeal by defendant from a judgment of the district court for Hennepin county, *Vanderburgh,* J., presiding. The case was argued at the October term, 1878, and a reargument was ordered, which was had at the April term, 1879.

*Benton & Benton,* for appellant.

*Shaw & Levi* and *Lochren, McNair & Gilfillan,* for respondents.

GILFILLAN, C. J.   Nicollet Island, above the Falls of St. Anthony, divides the Mississippi river into two channels — one, much the larger, flowing on the west side, and the other flowing on the east side of the island.   Hennepin Island lies between these two channels, just below Nicollet Island, and extends down to and below the falls.   Cataract Island is just below the falls, in the eastern part of the west channel, and near Hennepin Island.   Plaintiffs are the owners of Cataract Island and the lower part of Hennepin Island.   Defendant is the owner of the upper part of Hennepin Island.   That island was granted by patent of the United States to one Ira Kingsley, from whom these parties claim title.   The persons from whom defendant immediately claims its title had constructed a dam from a point near the head of Hennepin Island across the east channel of the river, and also a dam from the head of Hennepin to the foot of Nicollet Island, so as to prevent the flow of water between them, which they used until the construction of the present dam, in the year 1856.

In February, 1856, (Laws 1856, *c.* 137,) the legislature of the territory of Minnesota incorporated the defendant, and authorized it (sec. 9) "to maintain the [then] present dams and sluices, and construct and maintain dams, canals and water-sluices, erect mills, buildings or other structures for the purpose of manufacturing in any of its branches, or improving any water-power owned or possessed by said company,   *   *   *   and may construct dams on the rapids above or below the Falls of St. Anthony, with side dams, sluices, and all other improvements in the Mississippi river, upon the property owned, or to be owned, by said corporation, which may be necessary for the full enjoyment of the powers herein granted:   *   *   *   *providedc,* that nothing herein contained shall be so construed as to authorize said corporation to interfere with the rights or property of any

other person or persons whatever." Subsequent to the passage of this act, the present dam of defendant was constructed. The effect of this dam is to diminish, especially in low water, the amount of water which would naturally flow along the west bank of plaintiffs' property. This bank is valuable for mill-sites, the powers being furnished by the water flowing along the bank. The plaintiffs' mill is propelled by this water. The river is not navigable in fact at the falls, nor at or near the premises in question, but is available and of great value for water-powers. The question in the case is as to the right of defendant to maintain its dam in such a manner as to interfere with this flow of water, to the injury of plaintiffs.

It is evident that defendant cannot, by virtue merely of its rights as riparian owner, stop the water which would naturally flow past the land of plaintiffs, so as to interfere with any use which they, as riparian owners, have the right to make of it.

The defendant makes, in substance, these propositions:

*First.* The Mississippi river is a navigable stream, the government owning the bed of the stream, and the owners of the banks owning only, at farthest, to low-water mark.

*Second.* If there be any riparian rights in such a stream, they are such only as relate to or are connected with navigation, giving to the owner only means of access from his own land to the river, for purposes of navigation.

*Third.* The exclusive right to any water-power is in the owner of the soil over which the stream flows—in this case the government—and in such power the owner of the banks has no property.

*Fourth.* The government, by the act incorporating the defendant, vested in it the right to the water-power, and the right to make it available by constructing such dams, etc., as it might see fit; and, the dam being lawful, the plaintiffs, who have no property in the water-power in the river opposite their land, cannot complain if the dam interrupts such power.

We shall consider, first, the proposition that the charter

authorizes defendant to appropriate the water-power, as well opposite the plaintiffs' property as opposite the defendant's. If the proviso we have quoted had been omitted, still it is not clear that a proper construction of the act would give defendant the authority claimed. A legislative grant is construed strictly; where two interpretations may reasonably be put upon it, that least favorable to the grantee must prevail. The intention of the legislature to vest any right claimed must be clearly expressed, or appear by necessary implication. Upon the language of the act, (without the proviso,) it may certainly be doubted that the legislature intended to give authority to defendant to construct dams, etc., except for "improving any water-power owned or possessed by said company." The proviso removes any doubt that might otherwise exist. It is: "Nothing herein contained shall be so construed as to authorize said corporation to interfere with the rights or property of any other person or persons whatever."

It may be suggested that the "rights or property" here mentioned were such as persons might possess as against the state, and with which the state had no power to interfere. We do not intend to discuss the question whether riparian owners have rights in navigable waters, absolute as against the state, and which the state cannot take away without making compensation. That they have rights absolute as to every one unless the state, is undoubted, and the proviso was inserted to save those rights. In *Lyon* v. *Fishmongers' Co.*, 1 L. R. App. Cas. 662, the powers conferred by the "Thames conservancy act" on the "conservators of the Thames" were as full as the rights and privileges vested in this defendant by its charter, and the clause saving rights of others was of "any claim, privilege, franchise, exemption or immunity which any owner or occupier of any lands, tenements or hereditaments on the banks of the river, including the banks thereof, or of any aits or islands in the river, is now *by law entitled.*" This was held to protect the ordinary riparian rights of an owner on the banks.

It is now settled by the decisions of the court of last resort that under the acts of congress providing for the survey and sale of the public lands, the patentees of lands bordering on the Mississippi river and its tributaries take only to the stream—at furthest, to low-water mark—leaving the title to the bed of the stream below low-water mark in the government. Those streams, below low-water mark, stand, therefore, in respect to the rights of the government and individuals in them, the same as tidal rivers. The rights of riparian owners are the same in both.

Owners of lands bordering on navigable rivers and lakes—those navigable in the common-law sense, and those navigable under acts of congress—have rights in respect to the waters of such rivers and lakes, peculiar to such owners, and not possessed by others. *Dutton* v. *Strong,* 1 Black, 23; *Railroad Co.* v. *Schurmeir,* 7 Wall. 272; *Yates* v. *Milwaukee,* 10 Wall. 497; *Rose* v. *Groves,* 5 Man. & Gr. 613; *Duke of Buccleuch* v. *Metropolitan Board of Works,* L. R. 5 H. L. 418; *Metropolitan Board of Works* v. *McCarthy,* L. R. 7 H. L. 243; *Lyon* v. *Fishmongers' Co.,* 1 L. R. App. Cas. 662; *Delaplaine* v. *Chicago & Northwestern Ry. Co.,* 42 Wis. 214; *Brisbine* v. *St. Paul & Sioux City R. Co.,* 23 Minn. 114. The case of *Atlee* v. *Packet Co.,* 21 Wall. 393, does not deny this proposition. It decides that the riparian owner, as such, has no right to construct piers in the navigable portion of such a river, and is entirely consistent with *Dutton* v. *Strong,* 1 Black, 23, which affirmed the right to construct a pier or wharf out to the point of navigability.

No case or text-book that we have found has attempted to define or limit the uses which the riparian owner may make of navigable waters, as those waters are seldom capable of any use except for navigation. Whenever specific riparian rights have come in question, they have generally been connected with navigation, such as the right to construct and maintain wharves and piers, for access from the land to the water. Other cases, like *Railroad Co.* v. *Schurmeir,* 7 Wall. 272, and

*Brisbine* v. *St. Paul & Sioux City R. Co.*, 23 Minn. 114, have mentioned the right to construct wharves and piers, not to confine riparian rights to such structures, but to illustrate the proposition that the owner of the banks has peculiar rights in the stream.

There is a class of cases, among them *Lansing* v. *Smith*, 4 Wend. 9; *People* v. *Tibbetts*, 19 N. Y. 523; *Gilman* v. *Philadelphia*, 3 Wall. 713, which hold that riparian rights in navigable waters are subordinate to those of the state, and cannot in any manner interfere with the exercise of such public rights. These latter cases have no bearing on this, for here there is no attempt by the state to exercise the public power.

There are several cases in which the courts, *arguendo*, have indicated that the owner of the bank may make any use of the water adjoining his land not inconsistent with the public right, nor in opposition to the state. The only statement of a foundation for such a right, that we can find, is in the opinion of Lord Selborne, in *Lyon* v. *Fishmongers' Co.*, 1 L. R. App. Cas. 662, where he says, "the rights of a riparian proprietor, so far as they relate to any natural stream, exist *jure naturæ*, because his land has by nature the advantage of being washed by the stream."

In *People* v. *Tibbetts*, 19 N. Y. 523, it is said: "The riparian owner may undoubtedly use the water passing or adjoining his land for his own advantage, so long as he does not impede the navigation, in the absence of any counter claim by the state as absolute proprietor." In *Delaplaine* v. *Chicago & Northwestern Ry. Co.*, 42 Wis. 214, "all the facilities which the location of his land with reference to the lake affords, he has the right to . enjoy, for purposes of gain or pleasure. * * * These rights of user and exclusion are connected with the land itself, grow out of its location, and cannot be materially abridged or destroyed, without inflicting an injury upon the owner which the law should redress." And in *Canal Appraisers* v. *The People*, 17 Wend. 571, Senator

Tracy, in support of the right of the state to interfere with riparian rights without making compensation, said: "We may also take the case of the tide mills on Long Island, where the owners of the lands on the inlet of the sea possess an undoubted right to use the water for their private emolument, and where the capability of availing themselves of this water-power may constitute the chief value of the adjacent land."

*Dutton* v. *Strong*, 1 Black, 23, affirmed the right of a riparian owner on a navigable lake to build and maintain, for his own exclusive use and benefit, a pier into the lake as far as the point of navigability. The right to encroach upon the shallow water of the lake, by an exclusive appropriation even of the underlying soil, must rest upon the proposition that the riparian owner may make any use of the lake or river opposite his land not inconsistent with the public right.

As it seems to us, none of these opinions state the right too strongly. If the right exists *jure naturæ*, because the land has, by nature, the advantage of being washed by the stream, it is impossible to see how any such distinction as defendant claims can be made as to the peculiar uses which the riparian owner may make of the waters. The limit to the private right is imposed by the public right, and the private right exists up to the point beyond which it would be inconsistent with the public right.

We think the right in the riparian owner to put the water to any useful purpose may be sustained by considerations of public policy. It is certainly for the interests of the public that where the waters of a navigable stream may, without interfering with the public right, be put to some useful purpose, the right to so use them should exist.

We will state the rule at which we have arrived nearly in the language of the court in *People* v. *Tibbetts*, 19 N. Y. 523: The riparian owner may undoubtedly use, for any purpose, the water of a navigable stream passing or adjoining his land, for his own advantage, so long as he does not impede the

navigation, in the absence of any counter claim by the state or United States as absolute proprietor.   The conclusion follows that, as between these parties, the plaintiffs have a right to the natural flow of the water past their land, and any interference with this flow, to their injury, is a wrong for which they are entitled to an appropriate remedy.   To prevent such a wrong, injunction is an appropriate remedy.

We can see no elements of estoppel in the case.   The defendant has acted with full knowledge of all the facts, and, as must be presumed, knowing the law controlling the rights of the parties.   If it has mistaken its rights, there is nothing in the case to show that it was led into such mistake by the plaintiffs.   There is sufficient evidence to sustain the finding of the court below, upon the facts, in the particular complained of.

Judgment affirmed