## UNITED STATES v. WILLIS.
### No. 5203.

Circuit Court of Appeals, Fourth Circuit.

March 9, 1944.

Roger P. Marquis, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Leslie E. Given, U. S. Atty., of Charleston, W. Va., and

Vernon L. Wilkinson, Atty., Department of Justice, of Washington, D. C., on the brief), for appellant.

James S. Conley, of Charleston, W. Va., for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

John A. Willis is the owner of 1468 acres of land abutting the Great Kanawha River for 6,000 feet near Coalburg, West Virginia. Marmet Dam, authorized by the Rivers and Harbors Act of 1930, 46 Stat. 918, 928, to provide a 9 foot channel in the river, was put into operation on May 12, 1934. It raised the level of the river 12 feet opposite the Willis property and submerged a portion of it; and Willis brought this suit under the Tucker Act for damages. See, 28 U.S.C.A. § 41(20); § 762 to § 765.

The District Judge entered a judgment for the plaintiff in the sum of $10,000 with interest at 6 per cent for the period from April 5, 1940, when the suit was instituted, to July 13, 1943, when the judgment was entered. The award was composed of three items: (1) $3,671, with interest, for 3.671 acres of land at $1,000 per acre, consisting of a narrow strip 6,000 feet long, which was permanently overflowed by a 12 foot elevation in the level of the river; (2) $504.50 with interest, for one-half of the estimated value of an additional 1.009 acres of land which lay adjacent to and above the river at its new level and was subject to occasional flooding in the operation of the dam within an additional 5 foot elevation in the water level; and (3) the balance of the award allowed for the value of a cribbing made of logs filled with rocks and submerged in the river which had been constructed in 1903 and in subsequent years along the river edge of the property for 2600 feet to prevent erosion of the bank. We consider first certain contentions of the United States in regard to these items and then the contention that the court lacked jurisdiction to enter a judgment in excess of $10,-000.

█ The United States first complains that the District Judge failed to make a specific finding as to the value of the 3.671 acre strip permanently overflowed as required by the Tucker Act, 28 U.S.C.A. § 764. There is no basis for this contention. The judge expressly found that the fair market value of the 3.671 acres on May 12, 1934, when the dam was put in operation, was $1,000 per acre, and that for this taking the plaintiff was entitled to receive $3,-671 with interest from that date to the date of the institution of the suit on April 5, 1940. The judge stated that the evidence of value was conflicting but that his opinion, based on all the evidence, was that the land was worth $1,000 per acre. No greater particularity in the finding of the court was required by the Act.

█ Next, it is said that the evidence did not support the valuation of $1,000 per acre found by the court. A local appraiser testifying for the United States said that the land taken was worth only $200 per acre, basing his estimate largely on two sales of land situated three or four miles away on the other side of the river, of which one was sold for residence purposes and the other was sold at a forced sale. On the other hand three witnesses for the plaintiff variously estimated its market value from $2500 to $4000 per acre for industrial purposes for which it could most profitably be used.

The narrow strip in question sloped more or less precipitously to the stream and on that account it is contended that it was much less valuable than the more level land higher up. Nevertheless there was evidence that even the strip next to the river was usuable for industrial purposes. Under this state of the evidence it cannot be said that the valuation found by the District Judge who heard the testimony of the witnesses was clearly wrong. Nothing else would justify a reversal on this point under Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.*

█ The same evidence supported the valuation placed by the District Judge upon the higher strip of land which bordered the river at its new level and lay above the narrow strip which was permanently submerged by the operation of the new dam. It was admitted in the pleadings that in

---

* The United States refers to a decision of the Court of Claims on October 4, 1943 in Kelley's Creek & N. W. R. Co. et al. v. United States, in which a much smaller valuation for lands taken through the operation of the Marmet Dam on the Kanawha River was found; but the District Judge was obliged to estimate the value of the land upon the evidence produced before him and was not bound by the findings of fact of the Court of Claims in another case.

the normal functioning of the dam the waters in the pool above the dam vary in height from 590 to 595 feet above sea level and that within this 5 foot area lay 1.009 acres of the plaintiff's land. The District Judge accordingly found that this strip was subjected to occasional flooding. He found as in the case of the lower strip that the fair market value of the land was $1,000 per acre and also that the damages suffered by the plaintiff by the occasional flooding amounted to a taking of one-half of the fair market value of the property, or $504.50. It is established that a permanent intermittent overflow of land is a partial taking for which the taker is bound to make just compensation to the owner. Jacobs v. United States, 290 U.S. 13, 16, 54 S.Ct. 26, 78 L. Ed. 142, 96 A.L.R. 1; United States v. Sponenbarger, 308 U.S. 256, 267, 60 S.Ct. 225, 84 L.Ed. 230. It follows that there was no error in the finding of the judge upon the second item in suit.

The third question relates to that portion of the award allowed to the plaintiff for the value of the cribbing submerged and lost when the new level of the river was established. The cribbing was situate on land formerly above ordinary high water mark for a distance of 2600 feet along the shore and served to protect the land from the erosion that otherwise would have eaten it away at the river's edge. Part of the cribbing consisted of logs which had rotted away at the time of the submersion but the part that remained furnished substantial protection which was lost when the narrow strip was submerged. Similar protection was needed to save the land from erosion at the new level of the river and the cost of installing it would have been not less than $5 a running foot. The judge found that in the nine years succeeding the erection of the dam considerable damage to the bank had occurred which cribbing would have prevented.

The judge made no separate estimate of the precise value of the cribbing since the limitation of $10,000 imposed by the statute under the Tucker Act made such a finding unnecessary. He held that the fair market value of the cribbing was substantially in excess of the difference between $10,000, the limit of the court's jurisdiction, and the aggregate of the fair market value of the 3.671 acres of land permanently flooded and one-half of the fair market value of the 1.009 acres occasionally flooded, with interest, that is, the difference between $10,000 and the sum of $5654.30 or $4345.70.

It is not disputed that this estimate of the value of the submerged cribbing was conservative, but it is said that the United States is not liable for damages resulting from erosion caused by raising the level of a river and hence no allowance should have been made for the cribbing in this case. Cases are cited which discuss the rights of owners bordering on navigable streams and the dominant power of the United States to improve the navigable capacity of navigable streams without liability to riparian owners for consequential damages unless a taking of property in the constitutional sense is involved. See, Bedford v. United States, 192 U.S. 217, 223, 224, 24 S.Ct. 238, 48 L.Ed. 414; Gibson v. United States, 166 U.S. 269, 276, 17 S.Ct. 578, 41 L.Ed. 996; United States v. Chicago, M., St. P. & P. R. Co., 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064; Jackson v. United States, 230 U.S. 1, 33 S.Ct. 1011, 57 L.Ed. 1363; Cubbins v. Mississippi River Comm., 241 U.S. 351, 36 S.Ct. 671, 60 L.Ed. 1041. These decisions, however, do not furnish a guide in the pending case because the plaintiff is not asking for damages for the erosion of his land, but for the loss of cribbing located above ordinary high water mark at the former level of the stream. The permanent submersion of property, so located, in the course of the improvement of the navigation of a river is a taking for which compensation is required, as is shown by the concession that the United States is liable to the plaintiff for the value of his 3.671 acre strip. Cf. United States v. Chicago, M., St. Paul & P. R. Co., 312 U.S. 592, 597, 313 U.S. 543, 61 S.Ct. 772, 85 L.Ed. 1064. The cribbing is in the same category. It was installed by the property owner to protect his land from erosion and constituted a permanent improvement of undoubted value. It must be replaced at a cost exceeding the amount allowed by the court for its loss, if the land is to be shielded from the same sort of erosion that it was originally designed to prevent. In our view, it was as proper a subject of recoverable damages as a building erected on land to house the owner's possessions would have been. This holding in no way conflicts with the decisions that merely consequential damages suffered in the exercise of the federal power to improve navigable streams are not recoverable.

The plaintiff concedes that the judgment of the District Court was in error insofar as it exceeded the sum of $10,000 because the jurisdiction of the District Court under the Tucker Act is limited to claims not exceeding $10,000. 28 U.S.C.A. § 41(20). The amount sued for was $10,000 but the judgment rendered added interest at 6 per cent on this sum from April 5, 1940, the date of the institution of the suit. The judgment must therefore be modified by eliminating the interest, and as so modified, will be affirmed. See United States v. Salmon, 5 Cir., 42 F.2d 353.

Modified and affirmed.