77 So.2d 431 (1954)
DUVAL ENGINEERING AND CONTRACTING COMPANY, a Florida corporation, the State Road Department of the State of Florida, a body corporate, and Florida State Improvement Commission, an agency of the State of Florida, Petitioners,
v.
Louis M. SALES and Susan G. Sales, his wife, Respondents.
Supreme Court of Florida. Division A.
December 3, 1954.
Rehearing Denied January 18, 1955.
*432 J. Turner Butler, Jacksonville, for Duval Engineering and Contracting Co.
Richard W. Ervin, Atty. Gen., T. Paine Kelly, Asst. Atty. Gen., and D. Fred McMullen, Tallahassee, for State Road Dept. and Florida State Improvement Commission, petitioners.
Daniel & Poucher and Walter G. Arnold, Jacksonville, for respondents.
TERRELL, Justice.
Louis M. Sales and Susan G. Sales filed their complaint in the appropriate court against Duval Engineering and Contracting Company, a Florida corporation, the State Road Department of Florida and the Florida State Improvement Commission, a State agency, as defendants. The complaint alleged ownership by complainants of Lot One, Block A, of Palm Park Subdivision, City of Jacksonville, as per plat duly recorded, and that by virtue of such ownership they claim the fee simple title to the south thirty feet of a platted street (Gary Street) delineated upon said plat, abutting the described lot, including riparian rights appurtenant thereto in the St. Johns River, a navigable stream upon which said lands border.
The complaint further alleges that preparatory to construction of Gilmore Street Bridge, being part of Jacksonville Expressway over the St. Johns River, defendants invaded said lands and riparian rights of the plaintiffs and threaten to appropriate them, that the construction of said bridge will depreciate the value of said lands and render them unfit for the use to which they are devoted. The complaint prays that defendants be enjoined from proceeding further with construction of said bridge and to restore the property of plaintiffs to its original condition, or, in the alternative, that defendants be required to commence proceedings in eminent domain to condemn the rights and property of the plaintiffs to public use.
Defendants interposed their several answers to the complaint in which they admitted ownership of Lot One, Block A, of Palm Park Subdivision to be in the plaintiffs but they denied any right, title interest or ownership of the plaintiffs of any part of Gary Street as shown on the official plat of the subdivision. On the contrary, they averred that Gary Street at the location in question is a part of the system of State roads, duly designated as such by act of the legislature, to wit: Chapter 25002, Laws of 1949. The trial court decreed that any part of plaintiffs' proprietory claim to Gary Street was in subordination to the easement of the State of Florida for use of the State Road Department in the construction and operation of State roads and that riparian rights appurtenant to Gary Street of the extension thereof are vested in the State Road Department with the right to use said street and riparian rights for State road purposes.
Defendants interposed the further defense that under Chapter 26776, Acts of 1951, F.S.A. § 253.12, and Chapter 15861, Acts of 1933, F.S. § 420.05, F.S.A., the Trustees of the Internal Improvement Fund did on April 8, 1952, convey by deed to the Florida State Improvement Commission, for the use and benefit of the State Road Department, a perpetual easement for the construction of the Gilmore Street Bridge in and over all the submerged lands under the St. Johns River lying within 200 feet on each side of the center line of State Road 5, as surveyed for the construction of said bridge across the St. Johns River. This defense was stricken on motion *433 of the plaintiff by order of the chancellor, to which error was assigned.
November 6, 1953, the chancellor entered an order in which he found that respondents were the owners of riparian rights appurtenant to Lot One, Block A, of Palm Park Subdivision lying between parallel lines drawn from the northwesterly corner and the southwesterly corner of said lands to the point of contact with the edge of the channel of the St. Johns River, and at right angles thereto, which were appropriated and taken by petitioners in the construction of Gilmore Street Bridge. November 27, 1953, the chancellor entered a further decree in which he held that respondents were entitled to compensation from petitioners for appropriation and taking petitioners' riparian rights appurtenant to said lands and directing transfer of the cause to the law side of the docket to determine what compensation should be paid respondents for appropriating their riparian rights, said compensation to be determined by the law governing eminent domain. We are confronted with an appeal from both decrees.
The first question presented may be stated as follows: What was the effect of Chapter 26776, Acts of 1951, on the rights of riparian owners acquired under Chapter 8537, Acts of 1921, Butler Bill, F.S.A. § 271.01 et seq., said owners not having complied with the condition of the grant by filling in or permanently improving the submerged land continuously from high water mark in the direction of the channel.
In Holland v. Fort Pierce Financing & Construction Co., 157 Fla. 649, 27 So.2d 76, this Court held that Chapter 8537, Acts of 1921, clothed the upland owner whose lands were bounded by high water mark with title to the submerged lands to the edge of the channel but that such title was a qualified one and did not become absolute until the upland owner actually bulkheaded and filled in from the shore to the edge of the channel. The pertinent part of Chapter 26776, Acts of 1951, in effect provides that except as to Dade and Palm Beach Counties the title to all sovereignty, tide water bottoms, including all islands, sandbars, shallow banks and small islands made by the process of dredging the channel by the United States Government and similar or other islands, sandbars and shallow banks located in the tidal waters of the State of Florida is vested in the Trustees of the Internal Improvement Fund of the State of Florida to be held by them and disposed of as provided in this Chapter. From this it follows that unless the upland owner has bulkheaded and filled in the submerged lands in front of his uplands he has acquired no title therein and they may be subject to sale pursuant to Chapter 26776, Acts of 1951, the condition of the grant not having been fulfilled.
It is clear that Chapter 8537, Acts of 1921, and Chapter 791, Acts of 1856, had no other purpose than to stimulate and encourage the improvement of submerged lands and to improve the foreshore in the interest of commerce and navigation. Such was the consideration for the grant and was in fact the only valid condition it could be made in view of the common law as well as the organic law of the State. Panama Ice & Fish Co. v. Atlanta & St. A.B.R. Co., 71 Fla. 419, 71 So. 608; Commodore Point Terminal Co. v. Hudnall, 5 Cir., 3 F.2d 841. The condition imposed on the grant necessitates the improvement to give the grantee a fee simple title. Expressed otherwise, such lands were subject to reversion any time before the provisions of the grant were exercised. There was no question of the power of the legislature to pass the act. Illinois Central R. Co. v. State of Illinois, Vol. 146 U.S. 387, 389, 13 S.Ct. 110, 36 L.Ed. 1018; Holland v. Fort Pierce Co., supra; State ex rel. Buford v. City of Tampa, 88 Fla. 196, 102 So. 336; Deering v. Martin, 95 Fla. 224, 116 So. 54, 55.
The parties are in disagreement as to statement of the second question. With all the blow gum washed out, the real point in the question is whether or not the alleged physical invasion and appropriation of respondents' property was compensated for under the doctrine of damnum absque injuria.
*434 There is no dispute about most of the material facts in the case. It is admitted that respondents are the owners of Lot 1, Block A, Palm Park, that said lot abuts on the St. Johns River, that prior to construction of the fill or approach to the Gilmore Street Bridge the riparian property appurtenant to respondents' uplands had a water depth of from four to twelve feet, that by construction of said fill portions of respondents' riparian property was converted into dry land, having an elevation of from 0'00" mean low water, to more than five feet above mean low water. On the remaining portion of respondents' riparian property said fill was placed so as to leave the water depth over said lands at from 2.5 feet to twelve feet. It is contended that these undisputed facts amount to a continuing trespass in law, an encroachment on, an invasion, appropriation and a taking of respondents' riparian property. Selden v. City of Jacksonville, 28 Fla. 558, 10 So. 457, 14 L.R.A. 370; Hanna v. Martin, 160 Fla. 967, 37 So.2d 579; Nichols Eminent Domain, Vol. 2, page 255, Par. 6.23(1) and other cases are relied on to support this contention.
Petitioners contend on the other hand that the area described in the Court's decree is covered by water and was covered after the construction of the fill, that the riparian rights of respondents have not been disturbed, invaded or appropriated, neither, said petitioners, has the river bed been disturbed or appropriated. A plat filed as exhibit in the cause and prepared by engineers supports this contention except as to difference in depth of the water in front of respondents' lands. It is admitted that the fill and such changes as were made in respondents' riparian rights were those incident to the construction of the Gilmore Street Bridge which was accomplished by petitioners as agents of the State of Florida. Account of the facts presented, the effect of Chapter 26776, Acts of 1951, the fact that such changes as are shown to have been made in respondents' water rights have deprived them of little or any rights they did not have before.
It is our view that as to any claim respondents assert to the center of Gary Street, it is without effect in law because said lands were long since dedicated to highway purposes and the fact that the street has been changed by a fill and the highway placed on that does not change the essential purpose of the dedication. It is still used for the purpose of the dedication. This phase of respondents' claim disposed of, nothing remains but their common law right of unobstructed view over the river, the right of ingress and egress and the right to fish and bathe in the waters of the river. It is not shown that these have been materially disturbed.
In all other respects it appears that petitioners were lawfully exercising governmental power conferred on them, and while there may have been slight impairment of respondents' riparian claims they are without right to compensation. Arundel Corporation v. Griffin, 89 Fla. 128, 103 So. 422; Bowden v. City of Jacksonville, 52 Fla. 216, 42 So. 394; U.S. v. Chicago, M., St. P. & P.R. Co., 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064, and other cases.
The third and last question proceeds on the theory that respondents are entitled to recover compensatory damages in an action on the case but since we hold that respondents are without right to compensation it becomes unnecessary to discuss this question.
Certiorari is granted and the judgment below is quashed.
It is so ordered.
ROBERTS, C.J., and SEBRING and MATHEWS, JJ., concur.