The **BOROUGH OF FORD CITY, PENNSYLVANIA, Plaintiff,**

v.

The **UNITED STATES of America, Defendant.**

Civ. A. No. 60–607.

United States District Court
W. D. Pennsylvania.
Jan. 29, 1963.

John B. McCue, Kittanning, Pa., for plaintiff.

George P. Cheney, Jr., Pittsburgh, Pa., for plaintiff Pittsburgh Plate Glass Co.

Joseph S. Ammerman, U. S. Atty., for defendant.

WALLACE S. GOURLEY, Chief Judge.

Jurisdiction in this civil non-jury proceeding is based on a special act of Congress, Public Law 86–538, 74 Stat. 252.[1] Due to the factual and legal intricacies and complexities which existed, on stipulation of counsel and with the approval of the Court, the proceeding was tried solely as to liability.

The complexity is reflected by reference being made to the report of the Judiciary Committee of the House of Representatives in which the matter was most thoroughly considered and the involvements were such that it was the judgment of the House Judiciary Committee that the issues and differences should be resolved by the judicial rather than the legislative branch of the government.

Since 1898, the Borough of Ford City (hereinafter sometimes referred to as Borough) has owned and operated a sewage collection system. The system was operated with little or no difficulty until after 1928 when the United States completed construction of Lock and Dam No. 6, on the Allegheny River, about five miles downstream from Ford City. Since the construction of the lock and dam, Ford City has had continuous difficulty, to a substantial degree, with the sewage system. This action is brought to recover damages to the sewage system resulting from the construction, by the United States, of Lock and Dam No. 6, on the Allegheny River.

The questions presented are (1) whether the ordinary high-water mark was raised by the government in connection with the construction on the Allegheny River of Lock and Dam No. 6; (2) if so, whether it was raised to a point about at or above that of the elevation of portions of the sewage system of the Borough; and (3) whether the normal pool level of the river was raised to an elevation above that of the pre-dam ordinary high-water mark.

It is the considered judgment of the Court that each of said questions should be answered in the affirmative.

## DISCUSSION OF APPLICABLE LEGAL PRINCIPLES

The Fifth Amendment to the Constitution requires payment of just compensation for a taking of private property for public use. The Borough sewage system is clearly "property." While there may be no property right to discharge sewage into the river, Commonwealth v. Emmers, 221 Pa. 298, 70 A. 762 (1908), a question which we do not at this time decide, at best, acceptance of this argument would only affect the amount of damages to be received, and not the right to receive damages.

The navigational servitude of the federal government allows it to appropriate, without compensation, when

---

1. " * * * That notwithstanding laches or any statute of limitations, jurisdiction is hereby conferred on the United States District Court for the Western District of Pennsylvania, to hear, determine, and render judgment on the claim of the borough of Ford City, Pennsylvania, for damage to its sewer system allegedly due to the construction by the Department of the Army of a lock and dam designated as lock and dam numbered 6, on the Allegheny River."

exercising the power of the government to control and regulate navigable waters in the interest of commerce. United States v. Virginia Electric & Power Co., 365 U.S. 624, 627–628, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961). The dominant power of the federal government extends to the entire bed of the stream, which includes the lands below ordinary high-water mark. United States v. Virginia Electric & Power Co., supra; United States v. Kansas City Life Ins. Co., 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277 (1950); United States v. Chicago, M., St. P. & Pac. R. R., 312 U.S. 592, 61 S.Ct. 772, 85 L.Ed. 1064 (1941). The exercise of the power below the ordinary high-water mark, or within the bed of the stream, is not an invasion of any private property right in such lands for which the United States must pay compensation. Ibid.

■ Thus, it seems to be well settled that, under the Commerce Clause, United States Constitution, Article 1, Section 8, Clause 3, the United States has the power to improve its navigable waters in the interest of navigation without liability for damages resulting to private property within the bed of the navigable stream. United States v. Kansas City Life Ins. Co., supra.

■■ The ordinary high-water mark is the line which separates fast lands from the river bed. United States v. Kansas City Life Ins. Co., supra; see United States v. Virginia Electric & Power Co., supra; United States v. Twin City Power Co., 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240 (1956). The bed of a river is "that portion of its soil which is alternately covered and left bare, as there may be an increase or diminution in the supply of water, and which is adequate to contain it at its average and mean stage during the entire year, without reference to the extraordinary freshets of the winter or spring, or the extreme droughts of the summer or autumn." United States v. Chicago, M., St. P. & Pac. R. R., 312 U.S. 592, 596, 61 S.Ct. 772, 85 L.Ed. 1064 (1941); Alabama v. Georgia, 64 U.S. (23 How.) 505,

515, 16 L.Ed. 556 (1859). This river bed is also the "land upon which the action of the water has been so constant as to destroy vegetation. It does not extend to nor include the soil upon which grasses, shrubs and trees grow." United States v. Chicago, B. & Q. R. Co., 90 F. 2d 161, 170 (7th Cir.), cert. denied, 302 U.S. 714, 58 S.Ct. 33, 82 L.Ed. 551 (1937); see Oklahoma v. Texas, 260 U.S. 606, 632, 43 S.Ct. 221, 67 L.Ed. 428 (1923).

■■ Even if the questions presented as to the raising of the ordinary high-water mark and the normal pool level are answered in the affirmative and the government is deemed to have exceeded its navigational servitude or privilege, plaintiff cannot recover if the value, or monetary worth, of its sewage system is attributable solely to the flow of the stream and to the riparian location. See United States v. Virginia Electric & Power Co., supra; United States v. Twin City Power Co., 350 U.S. 222, 76 S.Ct. 259, 100 L.Ed. 240 (1956). When the United States utilizes or regulates "the flow of the water of a navigable stream there is no 'taking' of 'property' in the sense of the Fifth Amendment because the United States has a superior navigation easement which precludes private ownership of the water or its flow." United States v. Grand River Dam Authority, 363 U.S. 229, 231–232, 80 S.Ct. 1134, 4 L.Ed.2d 1186 (1960).

The rule that the United States may improve its navigable waters in the interest of navigation without liability for damages resulting to private property within the bed of the navigable stream would unquestionably have application to the situation where the United States constructs a dam in the interest of improving the navigable stream, and damage resulting from the construction would constitute an invasion of the property rights of the Borough only if the construction of the dam raises the ordinary high-water mark beyond that which existed prior to the construction of the dam or the normal pool level beyond the pre-dam ordinary high-water mark.

United States v. Kansas City Life Ins. Co., supra.

So, when the federal government improves navigable streams by means of locks and dams in the interest of navigation and thereby raises the ordinary high-water mark of the navigable stream or the normal pool level beyond the pre-dam ordinary high-water mark, and private property is damaged in whole or in part, said taking on the part of the government is in subordination to the Fifth Amendment and subject to the responsibility of the government for damages that are sustained as a proximate result thereof. See United States v. Virginia Electric & Power Co., supra; United States v. Cress, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917).

In short, the United States is liable for the destruction of the property owner's rights where the destruction is caused by raising the ordinary high-water mark of the navigable stream or the normal pool level beyond the pre-dam ordinary high-water mark, even though the ordinary high-water mark or normal pool level was raised in the interest of navigation or in pursuance of improving a navigable stream. United States v. Kansas City Life Ins. Co., supra. Furthermore, if the navigational servitude is exercised above the ordinary high-water mark, beyond the bed of the river, it is irrelevant that damage might have been caused by the underflowing of the land through percolation of the river waters rather than by flooding. See United States v. Kansas City Life Ins. Co., supra.

On the basis of the above legal principles, it is the considered judgment of the Court, after full and complete hearing and meticulous review of the record and evaluation of applicable law that (1) the construction of Lock and Dam No. 6 did raise the ordinary high-water mark to and above the elevation of portions of the sewage system and the normal pool level above the pre-dam ordinary high-water mark, (2) the value of plaintiff's sewage system is not attributable solely to the flow of the Allegheny River and to its riparian location but instead, the sewage system has value independent of the flow of the stream and the riparian location, value which has been damaged by the acts of defendant to an extent to be determined at the trial of the damages issue and therefore (3) the Borough of Ford City is entitled to recover against the United States.

## FINDINGS OF FACT

1. Plaintiff, Borough of Ford City, (hereinafter referred to as Borough) is a municipal corporation located in Armstrong County in the Commonwealth of Pennsylvania. It received its charter in 1898 and has operated as a borough form of government continuously since that time. It is situated on the left or easterly bank of the Allegheny River, one of the navigable waterways of the United States.

2. Borough brings this action pursuant to the Act of Congress approved June 29, 1960, Public Law 86–538, 74 Stat. 252, which confers jurisdiction upon this Court, notwithstanding laches or any statute of limitations, to " * * * hear, determine, and render judgment on the claim of the borough of Ford City, Pennsylvania, for damage to its sewer system allegedly due to the construction by the Department of the Army of a lock and dam designated as lock and dam numbered 6, on the Allegheny River."

3. The principal townsite has an approximate elevation of 782 feet.

4. Borough constructed its sewage collection system in 1898 in accordance with good engineering practice and in reliance on the natural level, temporary high waters, width and flow of the Allegheny River in its natural open river condition existing prior to the effect of Lock and Dam No. 6 on the river's elevation and high-water mark. Another section was added to this system in 1922. Borough has continuously owned and operated this sewer system for its residents. The system works by gravity flow with three outfalls into the Allegheny River. Sometime prior to Octo-

ber, 1928, the three outfalls discharged raw sewage directly into the Allegheny River at the following locations and elevations:

| LOCATION | ELEVATION AT RIVER | |
| --- | --- | --- |
| | Invert [2] | Crown [3] |
| First Street | 765.61 | 770.28 |
| Eighth Street | 764.04 | 768.54 |
| Power House Alley | 768.01 | 771.34 |

———◆———

5. The elevations of the inverts of the sewer lines at various locations within the city which feed into the sewer outfalls are as follows:

| LOCATION | ELEVATION |
| --- | --- |
| **First Street Outlet:** | |
| Pump house south of First St. on Third Ave. | 767.43 |
| First St. and Fifth Ave. | 768.50 |
| Second St. and Fifth Ave. | 769.10 |
| Third St. and Fifth Ave. | 770.23 |
| Second St. and Third Ave. | 769.13 |
| Third St. and Third Ave. | 770.14 |
| Fourth St. and Third Ave. | 771.59 |
| Fourth St. and Fourth Ave. | 771.96 |
| Fourth Ave. and Fifth Ave. | 770.33 |
| Fourth St. and Fifth Ave. | 772.12 |
| **Eighth Street Outlets:** | |
| Eighth St. and Third Ave. | 767.88 |
| Eighth St. and Fourth Ave. | 768.13 |
| Eighth St. and Fifth Ave. | 769.37 |
| Eighth St. and Sixth Ave. | 770.60 |
| Ninth St. and Sixth Ave. | 772.22 |
| Alley south of Ninth St. and Fifth Ave. | 771.31 |
| Ninth St. and Fourth Ave. | 772.27 |
| South Ninth St. and Third Ave. | 769.59 |
| Seventh St. and Third Ave. | 775.06 |
| Seventh St. and Fourth Ave. | 770.40 |
| Seventh St. and Fifth Ave. | 770.74 |
| Seventh St. and Sixth Ave. | 772.72 |
| **Power House Alley Outlet:** | |
| Power House Alley and Third Ave. | 769.91 |
| Power House Alley and Fourth Ave. | 772.91 |
| Twelfth St. and Third Ave. | 773.78 |

2. Invert refers to the bottom of the inside of the pipe.

3. Crown refers to the top of the inside of the sewer pipe.

6. In a state of nature the elevation of the flows of the Allegheny River varied considerably between periods of high flow and low flow.

7. In the interest of navigation and pursuant to the direction of Congress (37 Stat. 201, 216; H.Doc. 540, 62nd Cong., 2nd Sess.), the Corps of Engineers of the United States Army constructed Lock and Dam No. 6 to an elevation of 769 feet mean sea level. Lock and Dam No. 6 was completed in October, 1928, and is located on the Allegheny River at Clinton about five miles south and downstream from Ford City.

8. Lock and Dam No. 6 was built to a height of approximately 769 feet and created a pool suitable for slack water navigation. This resulted in the pool level at Ford City being increased from approximately 760 feet above sea level to approximately 770 feet above sea level.

9. Prior to the construction of Lock and Dam No. 6, the Borough's sewers operated with little or no difficulty and without the necessity of pumping except in periods of flood or extraordinary high waters.

10. The permanent high level of the Allegheny River and the filling of the sewers has necessitated the installation of additional pumps by the Borough and has required the pumping of the sewage system as a routine procedure to prevent the backflow into basements of properties of Borough's residents.

11. In order to fix the location of the pre-dam ordinary high-water mark, it was necessary to determine the elevation of the existing ordinary high-water mark and translate it into the location of the pre-dam ordinary high-water mark. This was done by utilizing the amount of flow of water necessary to reach the present ordinary high water mark and by determining where this same amount of flow of water would come on the banks of the stream in open river conditions.

12. On the basis of all the evidence introduced at the trial, the post-dam ordinary high-water mark at the average point in the Borough is 773.78 feet. The pre-dam ordinary high-water mark was 766.8 feet.

13. The ordinary high-water mark was raised by the government in connection with the construction on the Allegheny River of Lock and Dam No. 6 to a point about at or above that of portions of the sewage system of the Borough and the normal pool level of the river was raised to an elevation above that of the pre-dam ordinary high-water mark.

14. Underneath the soil located at Ford City, there is a stratum of water-bearing fine sand and gravel.

15. Ground water table is the top level of the ground water at any particular time. There is a direct relationship between the level of the river and the ground water table. If the river itself rises, there will be a flow back from the river into the soil which raises the water table, the elevation of which slopes upward away from the river banks.

16. When the dam raised the normal pool level of the Allegheny River to 770 feet at the Borough and maintained the elevation continuously at that level and at higher levels due to normal fluctuation of flow for protracted periods of time, and raised the ordinary high-water mark at the average point in the Borough to 773.78 feet, this affected approximately one-third of plaintiff's sewerage system at elevations up to 773.78. The damages caused by the underflowing of the land through percolation of the soil and raising of the water table, and aggravated by the need for increased pumping, was just as destructive as if the land had been submerged.

17. Subsequent to the construction of Lock and Dam No. 6, the ground water table at the Borough was raised to a point where approximately one-third of plaintiff's sewers were inundated, the surrounding soil being saturated. This is a continuing invasion which exists to the present day.

18. Plaintiff's sewage system has value separate and apart from any value in connection with the riparian use and flow of the Allegheny River.

## CONCLUSIONS OF LAW

1. By the Act of June 29, 1960, Public Law 86–538, 74 Stat. 252, jurisdiction was conferred upon this Court to "hear, determine, and render judgment on the claim of the Borough of Ford City, Pennsylvania, for damage to its sewer system allegedly due to the construction by the Department of the Army of a lock and dam designated as lock and dam numbered 6, on the Allegheny River."

2. The action of the United States in constructing Lock and Dam No. 6, on the Allegheny River, was taken pursuant to an appropriate act of Congress and in furtherance of its power over navigation.

3. Plaintiff's sewer collection is private property within the meaning of the Fifth Amendment to the United States Constitution, and the United States is liable for compensation for its damage and destruction resulting from the construction of Lock and Dam No. 6.

4. Plaintiff's sewer collection system is property having value, as such, not based solely upon riparian use and separate and apart from any value in connection with the flow of the Allegheny River.

5. Since the United States raised the level of the Allegheny River by the construction of Lock and Dam No. 6 and, in so doing, exceeded the ordinary high-water mark causing damage to approximately one-third of plaintiff's sewer system, the government is liable for damages sustained.

6. Where plaintiff's sewage collection system (exclusive of outfalls) is located beyond the bed of the navigable river on property not adjacent to the river and has value which does not stem solely from the flow of the stream, that value is based on its non-riparian use. Its destruction by the United States, by raising a navigable stream beyond its ordinary high-water mark and maintaining it continuously at such level so as to permanently raise the ground water table thereby inundating plaintiff's private property, is a taking within the meaning of the Fifth Amendment to the United States Constitution which must be compensated.

## CONCLUSION

The Borough of Ford City is therefore entitled to recover such damages as were sustained as the proximate result of the United States of America raising, as a result of the construction of Lock and Dam No. 6, the ordinary high-water mark level of the Allegheny River to an elevation to and above that of the Borough's sewage sytem and the normal pool level of the river above the pre-dam ordinary high water mark.

An appropriate order is entered.