381 F.2d 744
 Charles B. SHERRILL, Mary Y. Sherrill, William L. LaFollette and Susanne H. LaFollette, individually and doing business as Sherrill & LaFollette
v.
The UNITED STATES.
 No. 2-63.
 United States Court of Claims.
 July 20, 1967.
 
 William H. Rehnquist, Phoenix, Ariz., for plaintiffs, James Powers, Phoenix, Ariz., attorney of record.
 Herbert Pittle, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.
 Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.
 COWEN, Chief Judge.*
 
 
 1
 Plaintiffs are the owners of a tract of land in Arizona located until 1957 on the east bank of the navigable[1] Colorado River. Pursuant to the Act of June 28, 1946, ch. 517, 60 Stat. 338, the Government, acting through the Bureau of Reclamation of the Department of the Interior, moved the river channel west to improve navigation. Consequently, plaintiffs' land, instead of fronting on the Colorado, was separated from the river by the land of third parties. For the loss of the riparian right of access to the water, plaintiffs seek compensation either under the Fifth Amendment or under the Act of June 28, 1946, supra, itself.
 
 
 2
 Plaintiffs' claim that the rerouting of the Colorado River resulted in a taking of a private property right compensable under the Fifth Amendment is without merit. The Supreme Court has consistently held that the superior right of the Government to the flow of a navigable stream permits it to reduce the value of riparian lands by denying the riparian owner access to the stream without compensation for his loss. United States v. Commodore Park, Inc., 324 U.S. 386, 390-391, 65 S.Ct. 803, 89 L.Ed. 1017 (1945); Scranton v. Wheeler, 179 U.S. 141, 163, 21 S.Ct. 48, 45 L.Ed. 126 (1900); Gibson v. United States, 166 U.S. 269, 276, 17 S.Ct. 578, 41 L.Ed. 996 (1897). Concomitant with Congress' power under Article I, Section 8 of the Constitution to regulate commerce among the states and with foreign nations is the power to control and regulate navigable waters in the interest of commerce. United States v. Chicago, M., St. P. & Pac. R.R., 312 U.S. 592, 595-596, 61 S.Ct. 772, 85 L.Ed. 1064 (1941); United States v. Appalachian Elec. Power Co., 311 U.S. 377, 404, 61 S.Ct. 291, 85 L.Ed. 243 (1940). That power gives the United States a "dominant servitude" (Federal Power Comm'n v. Niagara Mohawk Power Corp., 347 U.S. 239, 249, 74 S.Ct. 487, 98 L.Ed. 686 (1954)) or a "superior navigation easement" (United States v. Grand River Dam Authority, 363 U.S. 229, 231, 80 S.Ct. 1134, 4 L.Ed.2d 1186 (1960)) in navigable rivers. Thus, when the Government acts to improve navigation on such waters, it does not take any private property within the meaning of the Fifth Amendment — it merely exercises a paramount power. See United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 62, 33 S.Ct. 667, 57 L.Ed. 1063 (1913).
 
 
 3
 Directly in point is United States v. Commodore Park, Inc., 324 U.S. 386, 65 S.Ct. 803, 89 L.Ed. 1017 (1945). There, the United States dredged a tidewater navigable bay and deposited the dredged materials in a navigable arm of the bay known as Mason Creek. The deposit destroyed the navigability of the creek and prevented any access via the creek to the bay. The owner of fast lands bordering the creek claimed that the deprivation of riparian access to the bay resulted in a taking of that part of the value of its lands attributable to accessibility. The Supreme Court rejected the claims.
 
 
 4
 Whatever market value of riparian lands may be attributable to their closeness to navigable waters, does not detract from the government's "absolute" power, in the interests of commerce, to make necessary changes in a stream. In short, as against the demands of commerce, an owner of land adjacent to navigable waters, whose fast lands are left uninvaded, has no private riparian rights of access to the waters * * * for which rights the government must pay. [Footnotes omitted]
 
 Id. at 391, 65 S.Ct. at 805.[2]
 
 5
 Plaintiffs' alternative ground for recovery is that the Act of June 28, 1946, supra, incorporates the Act of June 17, 1902, 32 Stat. 390, 43 U.S.C. § 383 (1964 ed.) dealing with Federal reclamation projects. Section 8[3] of the 1902 Act has been construed to require the United States, when it undertakes reclamation work, to compensate individuals for the destruction of private property rights recognized by state law whether or not the Constitution would have demanded such payment. United States v. Gerlach Live Stock Co., 339 U.S. 725, 739, 70 S.Ct. 955, 94 L.Ed. 1231 (1950). Plaintiffs maintain that Congress intended a similar result in this instance involving a project which they concede to have been undertaken for the improvement of navigation in the Colorado River.
 
 
 6
 The sole support for plaintiffs' contention that the compensatory features of the Act of June 17, 1902, supra, were meant to apply to the Act of June 28, 1946, supra, is the following reference to the 1902 Act in the 1946 statute.
 
 
 7
 In connection with operations conducted under this paragraph, the Secretary of the Interior shall have the same authority with respect to (a) the acquisition, exchange and disposition of lands, interests in lands, water rights and other property, and the relocation thereof * * * which he has in connection with projects under the Federal reclamation laws, Act of June 17, 1902 (32 Stat. 388), and Acts amendatory thereof or supplementary thereto.
 
 
 8
 We do not agree that the quoted sentence incorporates in the 1946 Act all the provisions of the Act of 1902. Rather, we think that the only purpose of the incorporated matter was to give the Secretary of the Interior certain powers possessed under the reclamation laws to the extent that such authority would be needed in the performance of a navigation project. We say this because the work authorized by and performed under the 1946 Act was solely "for the purpose of controlling the floods, improving navigation, and regulating the flow of the Colorado River." By contrast, the project involved in Gerlach, supra, was originally authorized only as a reclamation project (339 U.S. at 732, 70 S.Ct. 955). The reauthorization for that project expressly stated that "the provisions of the reclamation law, as amended, shall govern." (339 U.S. at 732, 70 S.Ct. at 959). Moreover, the Supreme Court characterized the reference to navigation in the reauthorizing act as "highly fictional." (339 U.S. at 737, 70 S.Ct. 955). That no right to compensation apart from a right under the Fifth Amendment was intended under the Act of 1946 is made clear by another provision of that statute stating that "the expenditure of moneys for any of the foregoing purposes shall not be deemed a recognition of any obligation or liability whatsoever on the part of the United States * * *."
 
 
 9
 Furthermore, in our view, the State of Arizona does not recognize any private riparian property rights to which section 8 would apply. Article 17, section 1 of the Arizona State Constitution, A.R.S., states that "[t]he common law doctrine of riparian water rights shall not obtain or be of any force or effect in the State." Any doubts about the sweep of this article have been dispelled by the Arizona Supreme Court.
 
 
 10
 This [Article] does not mean that sometimes the riparian water rights doctrine has no force or effect in Arizona, nor does it mean that the courts will enforce the provisions of the constitution as is deemed expedient. It means that the doctrine shall not obtain nor shall it be of any force or effect in the state. Ever.
 
 
 11
 Brasher v. Gibson, 101 Ariz. 326, 330, 419 P.2d 505, 509 (1966).
 
 
 12
 Plaintiffs assert that these authorities are applicable only to riparian rights to the use of the water itself and that the riparian right of access involved here is different. In view of the unqualified interpretation given to Article 17 of the Arizona Constitution by the Arizona Supreme Court, we do not believe that such a fine distinction as plaintiffs suggest would have any legal validity in that state. We, therefore, conclude that plaintiffs did not lose any private property rights recognized by Arizona law when the Government moved the Colorado River channel west.
 
 
 13
 Defendant's motion for summary judgment is granted and plaintiffs' petition is dismissed.
 
 
 14
 DAVIS, Judge, joins in the result, and in the opinion except for the discussion of the right of access under Arizona law. He does not believe it necessary or appropriate to decide that state-law issue which is not clearly resolved by the available materials.
 
 
 
 Notes:
 
 
 *
 The court acknowledges the assistance it has received from the opinion of Trial Commissioner C. Murray Bernhardt. Our opinion takes account of some argument not presented to the commissioner, but we agree with the result he recommended
 
 
 [1]
 State of Arizona v. State of California, 373 U.S. 546, 597, 83 S.Ct. 1468, 10 L.Ed. 2d 542 (1963); State of Arizona v. State of California, 283 U.S. 423, 453, 51 S.Ct. 522, 75 L.Ed. 1154 (1931)
 
 
 [2]
 Rands v. United States, 367 F.2d 186 (9th Cir. 1966), cert. granted, 386 U.S. 989, 87 S.Ct. 1308, 18 L.Ed.2d 334 (Apr. 10, 1967) upon which plaintiffs rely to establish that the loss of a riparian right of access to a navigable stream is compensable under the Fifth Amendment, is inapposite. That case was acondemnation proceeding involving the port site value of land riparian to navigable waters. Moreover, the Rands case involves more than the alleged taking of a riparian right of access — it involves the taking of the fast lands as well.
 
 
 [3]
 [Sec. 8] "Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to, or from any interstate stream or the waters thereof."