D. A. TRUMBULL, *Appellant,* vs. THOMAS MURDOCK MCINTOSH, *Appellee.*

138 So. 34.

Division B.

Opinion filed November 27, 1931.

Petition for rehearing denied January 4, 1932.

*A. S. Bussey*, for Appellant;
*Boozer & Boozer*, for Appellee.

WHITFIELD, P.J.—In a suit to enforce a mortgage lien the property covered by the mortgage is described as

"Commencing at a point 94 rods North of the Section line between Section 10 and 15 of Township 43 South, Range 43 East, at high water mark on the West Shore of Lake Worth; thence running West parallel with said Section line to the West line of said Section 10; thence North on said Section line 132 feet; thence East on a line parallel with the first or South boundary line to high water mark of Lake Worth; then South on said high water mark 132 feet to point of beginning and being situate in Section 10 of said Township and Range; together with all riparian rights thereunto belonging or in anywise appertaining."

It appears that the land abuts on the navigable tide waters of Lake Worth, a "tide water lake" or "bay of the sea"; that in 1925 the mortgage was executed and that subsequently the property was conveyed to a corporation which being then the owner of the property did "fill up from the shore" some distance into the water in front of

the land, divided the land including that filled in from the shore, into lots and blocks. The appellant claims a first lien on the filled in land by virtue of a judgment against the mortgagor's grantee.

The final decree appealed from subjected to the mortgage lien the described land "together with all riparian rights thereunto belonging or in anywise appertaining," "which shall include and embrace the lands as platted and subdivided" including "the submerged lands lying between the high water line and the low water line of Lake Worth adjoining the east side of the land in said mortgage described, and the said filled-in land."

The contention for the appellant is that as the land under the navigable tide waters in front of the upland was filled in by the corporation owner of the upland after the land was conveyed to it by the mortgagor, the filled in land is not subject to the mortgage, but is subject to appellant's judgment lien. The argument is in effect that under the statute no title to the submerged land vests in the riparian owner till the land is filled in as contemplated by the statute, and that as the land was filled in not by the mortgagor but by the grantee of the mortgagor, the title to the submerged land vested in such grantee to the exclusion of any right or interest in the mortgagor or his mortgagee; and that the appellant's judgment lien on the filled in land is good against the mortgage.

The mortgage lien covered the upland to high water mark of a navigable "tide water lake" or "bay of the sea," together with all riparian rights thereunto belonging or in anywise appertaining." What are such "riparian rights"?

The Riparian Act of 1921 contains the following:

"The State of Florida, subject to any inalienable trust under which the State holds said lands, divests itself of all right, title and interest to all lands covered by water lying in front of any tract of land owned by the United States or by any person, natural or ar-

tificial, or by any municipality, county or governmental corporation under the laws of Florida, lying upon any navigable stream or bay of the sea or harbors, as far as to the edge of the channel, and hereby vests the full title to the same, subject to said trust in and to the riparian proprietors, giving them the full rght and privilege to build wharves into streams or waters of the bay or harbor as far as may be necessary to effect the purposes described, and to fill up from the shore, bank, or beach as far as may be desired, not obstructing the channel, but leaving full space for the requirements of commerce, and upon lands so filled in to erect warehouses, dwellings or other buildings and also the right to prevent encroachments of any other person upon all such submerged land in the direction of their lines continued to the channel by bill of chancery or at law, and to have and maintain action of trespass in any court of competent jurisdiction in the State, for any interference with such property, also confirming to the riparian proprietors all improvements which may have heretofore been made upon submerged lands:

Provided, that the grant herein made shall apply to and affect only those submerged lands which have been, or may be hereafter, actually bulkheaded or filled in or permanently improved continuously from high water mark in the direction of the channel, or as near in the direction of the channel as practicable to equitably distrbute the submerged lands, and shall in no wise affect such submerged lands until actually filled in or permanently improved." Section 1774, C. G. L. 1927.

"Nothing in this law contained shall be construed to apply to lakes, except tide water lakes." Section 1779, C. G. L. 1927.

Such statutory rights as the statute confers vested in the riparian owner when the law became effective, and pass with conveyances of the uplands at least in the absence of contrary provisions.

In this case the statutory rights were apparently vested in the mortgagor and such rights were included in the lien of the mortgage. A subsequent conveyance of the upland by the mortgagor transferred to his grantee the

riparian rights that were vested in the mortgagor subject to the mortgage lien. Rights in the filled in lands were acquired subject to the mortgage lien. The fact that the mortgagor's grantee filled in the submerged land after acquiring title to the uplands, did not give the grantee the statutory rights in the submerged lands as against the lien of the mortgage. Such rights vested in the owner of the upland at the effective date of the statute and presumably passed to successive grantees. Filling in and improving gave no new title to the submerged land. It only complied with the conditions under which the statute granted the riparian rights to the owner of the uplands. The "riparian rights" under the statute covered by the mortgage were the statutory rights to fill in and improve as prescribed, and to protect the submerged land against trespassers. These rights passed to the mortgagor's grantee subject to the mortgage. Purchasers and creditors of such grantee take subject to the mortgage.

Assuming that the mortgagor had the qualified title to the submerged lands which the statute vested in the riparian owner, such qualified title to the submerged lands as well as the title to the uplands were covered by the mortgage; and assuming that the conveyance of the mortgaged premises included both the uplands and the statutory rights of a riparian owner in the submerged lands, such conveyance as to both the title to the uplands and the statutory rights in the submerged lands, was subject to the mortgage. Whatever rights in the submerged lands the mortgagor's grantee had, were primarily acquired not by filling in but through the mortgagor's conveyance of the uplands, which conveyance included the riparian owner's statutory rights in the submerged land; and all of such rights so acquired are subject to the mortgage. The right to fill in, to utilize and to protect the submerged land as authorized is the qualified title that is vested by the statute in the riparian owner.

Filling in is the proprietary use of the submerged land that is contemplated by the statute in making the qualified grant. The source of title to the submerged land is the statutory right vested in the riparian owner, not the process of filling in.

The mortgagor's grantee acquired statutory proprietary rights in the submerged land not by filling in but by the conveyance from the mortgagor who as riparian owner had such statutory proprietary rights in the submerged lands. The conveyance from the mortgagor to the mortgage grantee was subject to the mortgage covering the uplands and "all riparian rights" of the mortgagor in the premises; and purchasers from and creditors of the mortgagor's grantee have no greater rights in the submerged lands than such grantee of the mortgagor had.

Affirmed.

TERRELL AND DAVIS, J.J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.