ALLEN, Judge.
The appellants filed an amended complaint May 14, 1958, against the Trustees of the Internal Improvement Fund of the State of Florida, Al W. Furen and Isobel E. Furen, his wife, Leonard Lee Ratner, John David Fulford and Beatrice Elizabeth Fulford, his wife, and the City of St. Pe-tersburg, a municipal corporation. The complaint alleged the transfer of certain sovereignty land in Boca Ciega Bay to certain parties by the Trustees of the Internal Improvement Fund, and seeks to void the sale of such properties on the grounds that the trustees had adopted a policy that the sovereignty lands would be sold only to persons owning the uplands adjacent to such lands, and that it was falsely and fraudulently represented to the Trustees that the applicants for deeds to the property described in the complaint were the owners of the uplands adjacent to such sovereignty lands when actually the uplands were owned by the City of St. Petersburg; that the Trustees were fraudulently induced by such representations to sell such lands and by failing to investigate the truth of such representations the Trustees were guilty of a gross abuse of discretion amounting to a fraud upon the people of the State of Florida and a fraud against the City of St. Petersburg and the citizens and residents thereof.
The complaint also contained the following allegations:
“11. The defendant, City of St. Pe-tersburg, a municipal corporation of Pinellas County, is the owner of certain uplands in Pinellas County adjacent to Boca Ciega Bay and to which lands have attached riparian rights under the laws of the State of Florida. The area for which permit was granted by the Pinellas County Water and Navigation Authority to the Defendants AL W. FUREN and ISOBEL E. FUREN is situated in Boca Ciega Bay adjacent to said uplands owned by the City of St. Petersburg and between said uplands and channel in Boca Ciega Bay and by reason thereof and any attempt to fill said area pursuant to the permit will constitute an infringement upon, and impairment of, the riparian *46 rights attached to. the uplands owned by the City of St. Petersburg.
$ ‡ >{s ‡ Hi #
“15. The defendant, City of St. Pe-tersburg, a municipal corporation, appeared in the proceeding before Pinel-las County Water and Navigation Authority as an objector but has failed and refused to pursue its remedy in order to prevent the infringement upon and impairment of its riparian rights to said uplands and the defendant, City of St. Petersburg, continues to refuse to assert the rights of the citizens of said city in and to said lands.
“16. The plaintiffs are unable to assert their complete rights as citizens of St. Petersburg, Pinellas County, and State of Florida in the proceedings relating to the application for permit to dredge and fill; and if the rights of the defendants in those proceedings are upheld, there is imminent danger that said lands will be dredged and filled to the permanent and irreparable damage to the rights of the public and the riparian rights of the City of St. Petersburg.”
It will be seen from the above allegations that this suit is a continuation of the litigation involved in the case of Alliance for Conservation of Natural Resources in Pinellas County v. Furen, Fla.App., 110 So. 2d 55, opinion filed February 25, 1959, rehearing denied April 6, 1959, where this court denied certiorari. It was stated in oral argument before the court that all the parties involved in this suit were also involved in the litigation in the case before mentioned.
The Trustees of the Internal Improvement Fund filed a motion to dismiss the amended complaint as to the Trustees, which motion was granted by the lower court. We find no error in the lower court in so doing as the allegations contained in the complaint, insofar as the Trustees of the Internal Improvement Fund are concerned, are not. sufficient upon which to predicate fraud. The Trustees, in their brief, page 2, state:
“The minutes of the Trustees attached to the Amended Complaint show that all sales attacked in this proceeding were made in the years 1952 and 1953. Section 253.13, Florida Statutes, 1951 and 1953, which governed sales, empowered the Trustees to sell submerged lands after advertisement by publication of notice of hearing for objections only. In the event of objections, the Trustees were required under the statute to hear the same and to consider whether or not such sale would interfere with private riparian rights of would be a serious impediment to navigation or public fisheries. Not only was each application to purchase duly advertised as required, but the Trustees went beyond these requirements by sending notice to the City of St. Petersburg, the upland owner, and 'to others, including the county authorities. The only objection filed to any of the applications was by the West Coast Inland Navigation District to the effect that one application affected its right-of-way. This objection was promptly and fully satisfied by the Trustees.
“In appellants’ brief the only statement made in support of the contention that the Trustees abused their discretion and violated their trust is this:
“ ‘The surrender of title to an area as extensive as the one involved where the rights of the people to bathe, boat and fish would be destroyed by a fill is clearly an abuse of discretion on the part of the Trustees and a violation of their trust. The Trustees were derelict in their duty to the people by delegating' decisions to their land agent, who was in fact a land salesman, and in failing to ascertain whether or not his recommendations conformed to their policy. This former land agent, *47 in his deposition, denies that any policy existed, but this is not borne out by the record of the transaction in his office. That there was a policy is established by the affidavit of Honorable Richard W. Ervin, Attorney General, one of the Trustees.’
“The amended complaint contains no such allegation. Indeed, the excerpts from the Trustees’ Minutes attached to and made a part of the amended complaint show clearly that the Trustees made the decisions. The presumption is that the Trustees did their duty.”
In Pembroke v. Peninsular Terminal Co., 108 Fla. 46, 146 So. 249, 258, the Court said:
“The presumption is that the trustees, being public officials of the state, complied with their duty under the law, and that they correctly ascertained the facts warranting their action. This presumption is to all intents and purposes a conclusive one when attempted to be put in issue by a collateral attack in a suit between private parties; * * *
* * * * * *
“The federal courts hold that the decision of the land department upon questions of fact is conclusive on the courts; that the courts will not entertain an inquiry as to the extent of the investigation by the Secretary of the Interior and his knowledge of the points involved in his decision as to a contest in the land department, nor as to the methods by which he reached his determination. DeCambra v. Rogers, 189 U.S. 119, 23 S.Ct. 519, 47 L.Ed. 734. * * * ”
Florida Statutes 1955, § 253.12, F.S.A., places title to tidal lands, with the exception of lands in Dade and Palm Beach counties, in the Trustees of the Internal Improvement Fund, and Section 253.13, Florida Statutes, F.S.A., provides:
“The trustees of the internal improvement fund may sell and convey the islands and submerged lands, granted by § 253.12, upon such prices and terms as they see fit, after giving notice by publication in a newspaper published in the county * * * in which such islands or submerged lands are located, not less than once a week for four consecutive weeks, in order that any persons who have objections to such sale may have opportunity to present the same; and, if no objections are filed within the said thirty days, the trustees have authority to consummate such sale. If objections are filed, the trustees shall hear and consider the same and, if it appears that the sale of such islands and submerged lands and their ownership by private persons would interfere with the rights granted riparian owners by the laws of Florida, or would be a serious impediment to navigation or public fisheries, the trustees shall withdraw the said lands from sale.”
Section 253.14 provides:
“It is expressly provided that nothing contained in this chapter shall be so construed as to deprive any private riparian owner from bringing an injunction suit in equity against the sale provided for in § 253.13 on the ground that he would be thereby deprived of his riparian rights granted to him by law; provided, that such suit must be commenced within thirty days after the trustees shall have overruled the objections of such owner to such proposed sale.”
The appellants, plaintiffs below, in their complaint alleged that the City of St. Pe-tersburg was the riparian owner and if it did not protect the rights of the public to the riparian rights the complainants were, in effect, entitled to sue as class plaintiffs. It will be observed that under Chapter 253, Florida Statutes, F.S.A., a riparian owner, *48 after the notice published by the Trustees of the purported sale of submerged land, had the right to file objections and if objections were filed and the Trustees proceeded with a sale despite such objections, that the riparian owners still had the right within 30 days to file an injunction suit to protect such rights. The complaint in this case makes no allegations of any protest made by the City of St. Petersburg or that any action was taken to enjoin the Trustees from deeding the property in question within 30 days after the hearing as provided by the statute, or why the parties waited some five years after the deeds, and after they had participated in another hearing involving the same question, to institute this suit.
In the case of East Coast Grocery Co. v. Collins, Fla.1957, 96 So.2d 793, 794, the Florida Supreme Court, in an opinion by Mr. Justice Thomas, in a suit involving title to certain submerged lands, said:
“Under the first cited section the title to certain submerged lands is vested in the Trustees of the Internal Improvement Fund and may be sold in accordance with the provisions of Sec. 253.13. In that law it is required that notice be published in a newspaper of the county where the land is situated so that persons having objection may be heard. If no objection is offered the Trustees are authorized to consummate the sale ; if objection is made and upon hearing it appears that the sale would interfere with the riparian rights of private owners, the lands must be withdrawn from sale.
“We pause now to remark that the notice described in the complaint was the notice contemplated by this section and that according to the complaint the objection of the appellant was overruled so it may be presumed that the Trustees decided that there would be no interference with the riparian rights of the appellant, therefore, that there was no occasion to withhold the land from the market.
“The last section cited to the court by the attorney general, Sec. 253.14, is of the utmost importance to a decision of this case. It contains an express provision that nothing in Chapter 253, shall be taken to prevent an owner from bringing a suit to enjoin such a sale on the ground that he would be deprived of his riparian rights. It is provided in that statute, too, that the suit must be commenced within 30 days after an objection is overruled and that in case a suit is brought the Trustees shall decide whether to defend the suit or withdraw the property from sale.”
The above action involved the question of the venue of the suit so it is not necessary to discuss the above case further.
It will also be observed from the above decision and from Chapter 253, Fla. Stat.1955, F.S.A., that in the event no objections are filed, there is no necessity for the Trustees to determine whether any riparian rights or other rights are involved.
We do not think the lower court erred in granting the motion to dismiss the complaint.
The individual appellees filed a motion to dismiss the amended complaint, together with a motion for summary final decree. The deposition of Sinclair Wells, who was the land agent for the Trustees at the time of the issuance of the deeds in question, was filed in the cause, together with the exhibits introduced in evidence at the taking of the deposition. The appellees also filed with the motion for summary judgment affidavits of John David Fulford and Al W. Furen. The appellants, in opposition to the motion for summary final decree, filed an affidavit of the Honorable Richard W. Ervin, as the Attorney Gen *49 eral of the State of Florida and, as such Attorney General, one of the five Trustees of the Internal Improvement Fund.
The affidavit of Fulford was to the effect that he never represented to the Trustees of the Internal Improvement Fund or their agents, servants or employees, that he ever owned any uplands relative to the submerged lands involved in this suit, other than certain described property which contained six acres more or less, and that he never authorized anyone acting for and on behalf of him to make any representation that he owned any uplands other than those above described. To the same effect was the affidavit of Al W. Furen.
The deposition of Sinclair Wells appearing in the transcript contained some 75 or more pages of testimony, together with various exhibits attached to such deposition. Mr. Wells stated in his deposition that he was familiar with the lands in Boca Ciega Bay, known as “Furen Fill” and that the applications were handled by him and he testified that Fulford represented that he owned the uplands on the west side of the bay; subsequently Wells identified the uplands testified to by Fulford as being the particular area of the uplands owned by Fulford. Wells further stated that neither Fulford, Furen or Ratner, nor anyone purporting to represent them, represented to him that the appellees, or either of them, owned the uplands or any of the areas except the small tract testified to by Fulford.- Mr. Wells further stated:
“Q. Now, Mr. Wells, if you will refer to Defendant Fulford’s Exhibit No. 1 for identification to sheet marked 25 in white, and I will ask you if the area marked ‘A’ on that sheet is the same area as that previously marked by you on Defendant Fulford’s Exhibit 4, sheet number 2? A. That ‘A’?
“Q. Yes? A. That’s the upland property. That was represented to be the upland property,
“Q. And that is the only piece of property that they represented that they owned as the uplands ? A. That’s the only piece.
“Q. That is the parcel marked 'A’ on sheet number 25 in Defendant Ful-ford’s Exhibit No. 1 ? A. That’s correct.”
As to the uplands which Mr. Fulford claimed to own, a certificate of the Guaranty Abstract Company was filed, which certified his ownership of such uplands. (Exhibit 1-31.)
The pleadings before the court on the motion for summary judgment was predicated on an abuse of discretion and fraud and the failure of the Trustees to investigate the truth as to the alleged ownership of the uplands on the allegation that it was falsely stated that the individual appellees owned the uplands to the submerged property involved in this action and which allegations were denied by the affidavits filed by two of the appellees on their motion for summary judgment. The testimony of Sinclair Wells was affirmatively to the effect that there was no misrepresentation as to the ownership of the uplands, and that he, as land agent of the Trustees, had full knowledge as to what lands were actually owned by Fulford; that the lands were advertised for sale and neither the appellants nor the city objected to the proposed sale; that there was only one objection filed which was that there was a possible interference of the proposed fill with the Inter-Coastal Waterways, and that the Trustees took knowledge of this objection and provided for no interference with the Waterway.
The affidavit of the appellants did not put in issue any fact which would have precluded the Trustees of the Internal Improvement Fund for making the sale of the property in question. The Attorney General stated in said affidavit that he was one of the five Trustees of the Internal Improvement Fund, who is charged with the management, control and supervision of *50 submerged tidal lands in the State of Florida, that he recalls the transaction with Furen and Fulford wherein certain parcels of submerged lands were sold to these parties; that the records of the Trustees reflected that they executed certain deeds (deeds described in said affidavit), that the official minutes of the Trustees reflect that the sale of said lands, except as to the first transaction, were made upon recommendation of a member of the staff or the then land agent. That as to the first sale, the minutes are silent concerning any recommendation. That he, as a Trustee, relied upon the recommendation of the staff or land agent as a predicate for official action taken by the Trustees for the sale of said lands. That it was and had been the policy of the Trustees of the Internal Improvement Fund to make sales of submerged lands adjacent to uplands to the upland owner. That when a recommendation was made by the staff or the land agent, he, as a trustee, assumed that there had been proof of ownership of the upland by the applicant before consummation of the sale of submerged lands adjacent thereto; that if the application for the sale of submerged lands was by one other than an upland owner, it was the general policy of the Trustees to sell the same only after advertising for competitive bids.
Wells, in his deposition, had raised a question about the general policy so the affidavit of the Attorney General could have raised this issue. However, the issue so raised would be immaterial insofar as the validity of the deeds to the appellees was concerned. Therefore, no dispute of fact relative to the validity of the deeds was i-aised by the appellants in resisting the individual appellees’ motion for summary judgment.
We have heretofore stated in this opinion that the complaint was insufficient to allege fraud, actual or constructive as to the trustees, and have held that the court was not in error in granting the motion to dismiss. The individual appellees moved for summary judgment and we are of the opinion that the depositions, affidavits, and exhibits failed to show that any fraud or abuse of discretion was committed. The depositions and affidavits show there was no misrepresentation as to the ownership of the uplands and that the agent, Wells, had full knowledge as to what lands were actually owned by Fulford. It will be observed from the laws in force that the Trustees of the Internal Improvement Fund had authority to sell any of the submerged lands upon such terms as they deemed advisable. The contracts were executed in 1952 and early 1953 under Florida Statutes (1951) Sections 253.12 and 253.13, F.S.A.
Section 253.13 provided that the Trustees could convey the islands and submerged lands granted by Section 253.12 upon such prices and terms as they saw fit, after giving notice by publication in a newspaper published in a county seat of the county in which such lands were located in order that any person having objections would have the opportunity to present the same; and if no objections were filed the Trustees had full authority to consummate such sale. The record divulges that the lands in question were advertised for sale and no objections were made, except the one heretofore mentioned as to the possible interference with the Inter-Coastal Waterway.
A riparian owner has no specific rights to the purchase of sovereignty lands held in trust by the Trustees. See Duval Engineering & Contracting Co. v. Sales, Fla., 77 So.2d 431; Holland v. Fort Pierce Financing & Construction Co., 157 Fla. 649, 27 So.2d 76.
We are of the opinion under the record in this case that no error has- been committed by the lower court.
Affirmed.
KANNER, C. J., and STURGIS, WALLACE E., Associate Judge, concur.