WILLIS, BEN C., Associate Judge.
Appellants have appealed from two orders in a mortgage foreclosure suit which (1) denied a motion to vacate the final decree of foreclosure, and (2) denial of objections to the foreclosure sale. Appellee moved to dismiss the appeal on the ground that appellants seek only to raise issues decided in the final decree from which no appeal was taken. This motion was orally argued before this Court December 1, 1964 but we then entered an order deferring consideration until the appeal is heard and considered on the merits.
Upon examination of the record it appears that the issues which the appellant urges have been fairly raised in the objections to the foreclosure sale, and the Court ruled upon them afresh in the order denying the objections. It is also noted that the order denying the motion to vacate directed that a stipulation of facts, which had been presented, be incorporated into and made a part of the final decree of foreclosure, thus amending the final decree in that respect.
*42 The motion to dismiss the appeal is denied, and we proceed to consider the case on its merits.
Appellee Berkowitz was plaintiff in the trial court in which he sought the foreclosure of a mortgage dated December 31, 1958 which encumbered the north quarter of Section 33, Township 24 South, Range 16 East in Pasco County, less certain named units and additions of Hudson Beach Estates and subject to prior executed agreements for deeds.
At the time the mortgage was given the north quarter of said Section 33 was bounded on the west by the Gulf of Mexico and consisted of riparian upland. Subsequent to the execution of the mortgage a bulkhead line was established by the Trustees of the Internal Improvement Fund, and in 1962 the said Trustees conveyed to V. M. Clark, Jr., one of the mortgagors to Berkowitz, some 13.18 acres of submerged lands adjacent to the upland.
Both upland and submerged land was developed, plats of subdivisions were re-corded_ and the entire area disposed of by sale of lots to a large number of purchasers. The appellants obtained deeds to lots which are located in the area of the submerged lands acquired from the Trustees. They were made parties defendant to the foreclosure suit and filed answers thereto.
The chancellor entered a final decree of foreclosure which contains a unique feature. It provided that the foreclosure sale would be subject to the right of certain persons having an interest in lots in the foreclosed lands to redeem them by subsequently making application and presenting to a special master verification of their claims, who would report to the court recommendations on the validity of such claims. The special master appointed is an associate of appellee’s counsel. The Court would then render a supplementary decree determining such claims. For those found to have valid claims, their land could be redeemed from the mortgage and the foreclosure sale by paying to the purchaser at the foreclosure sale the greater of either, (a) the balance due under any purchase contract from which the claim arose, or (b) an amount equal to the sum found to be the pro rata portion of the mortgage debt and costs of each parcel, piece or lot.
The decree did not include the appellants in the provisions for redemption after sale, but a subsequent stipulation of record by the plaintiff, who was also the only bidder at the sale, provides that any person, whether named in the final decree or not, who has equitable interests in the property would have the same rights as those persons named in the decree.
The appellants raised a number of points in their assignments of error, but have argued only two of them in their brief. Those points not argued are deemed abandoned. Rule 3.7(i), Florida Appellate Rules, 31 F.S.A.
The principal contention is made that the lots of the appellants, located in the area of the submerged land, were not embraced within or subject to the mortgage. It is urged that when the mortgage was executed the only property which would be included in the north quarter of the said Section 33 was the upland whose boundary extended only to the high water mark on the Gulf shore. The submerged land which constituted the area from which appellants later derived their lots was then vested in the State of Florida as sovereignty lands and, it is argued, were never intended to be and were not included in the mortgage. The appellee responds that the submerged lands were physically within the bounds of the north quarter of the section, and though the title was not vested in the mortgagors at the time the mortgage was given, it was later vested in one of them and thereby became subject to the mortgage lien as after acquired property.
We do not have the benefit in the record of any maps or plats of this Section 33 as it existed at the time of the exc- *43 cution of the mortgage or since then. However, it seems clear that this section was originally a fractional section with a surveyed meander line along the Gulf shore to mark the extent of its surveyed boundaries. This being so, a conveyance or mortgage of lands by reference to the north quarter of the section would affect only the uplands bounded by the high water mark on the shores of the navigable body of water, which in this instance is the Gulf of Mexico. However, such a conveyance or mortgage would carry with it all of the riparian rights appurtenant to the upland, and this is so whether such rights are mentioned in the instrument or not. F.S. 271.-09(1), F.S.A. The riparian owner has certain preferential rights to acquire from the Trustees title to adjacent submerged sovereignty lands. F.S. 253.12(1), F.S.A. These rights inuring in the riparian upland are valuable appurtenances and if they are impaired, destroyed or diminished, the value of the upland is adversely affected.
The mortgagee of riparian upland has his lien on the riparian appurtenances as well as the land above the high water mark. It would follow that when the riparian owner of the mortgaged upland exercises and implements his preferential rights to acquire from the state the adjacent submerged land so that the original upland no longer is waterfront with full riparian rights, such newly acquired lands would inure to the benefit of the mortgagee of the upland and be subject to the mortgage lien. The acquired submerged land is the direct fruit of and in large measure the replacement for the appurtenant riparian rights attached to the upland which had been subjected to the lien of the prior mortgage.
In Trumbull v. McIntosh, 103 Fla. 708, 138 So. 34, it was held that a mortgage of the upland carried with it the qualified title and proprietary interest of the upland owner in the adjacent submerged lands as such rights were defined in the Riparian Act of 1921, Section 1774, C.G.L.1927. The appellants seek to distinguish this case from that sub judice by pointing out that the Riparian Act of 1921 has been supplanted by the Riparian Act of 1957, Ch. 57-362, Laws, 1957, so that riparian rights under the statutes in force when the mortgage was executed are very different from those considered in the Trumbull case.
Under the 1921 Act, the riparian owner was granted the right to fill in and improve adjacent submerged lands to the edge of the channel and to protect such lands from trespassers. This right was in the nature of a qualified title to such submerged lands to ripen into full title when bulk-headed and filled in. This appeared as Sec. 271.01, F.S.1955 and was repealed by Ch. 57-362, which also amended Sec. 253.12, F.S.1955, with regard to the title to tidal lands, and enacted what are now F.S. Secs. 253.122-253.128, F.S.A. pertaining to fixing bulkheads and filling in submerged lands. See F.S.A., Sec. 271.01, History and Source of Law.
 It is quite true that the riparian rights conferred under the now repealed Sec. 271.01, F.S.A. are very different from those recognized and provided in what is now Sec. 253.12 F.S.1965, F.S.A. and which may be implemented and facilitated by the bulkheading and filling provisions set forth in Secs. 253.122-253.128. However, the riparian rights now provided by statute are, like those repealed, appurtenances to the land, inseparable from it, and follow by operation of law any conveyance or encumbrance of it. Such rights are not in the nature of a qualified title in the adjacent submerged lands but are in the nature of a preferential right of purchase. In each instance the right of the upland owner is a valuable appurtenance to the title in the upland.
The appellants also point out that a riparian owner has no specific rights to the purchase of sovereignty lands held in trust by the Trustees, citing Anderson v. Collins, Fla.App.1959, 111 So.2d 44. How *44 ever, in F.S. 253.12(1), F.S.A. there is a preferential privilege that “lands defined herein lying between the ordinary high water line and any bulkhead line, established hereunder shall be sold only to the upland riparian owner and to no other person, firm or corporation; and such sale to said upland riparian owner shall be made pursuant to the provisions herein.”
It is contended that since the bulkhead line was not established until after the mortgage was executed there were no rights conferred by the above quoted portion of the statute to the riparian owner in this case. This is without merit. Though the right conferred was conditional and inchoate, it was nevertheless valuable and appurtenant to the land and became subject to the mortgage lien.
It is accordingly concluded that the chancellor was correct in finding the lots of the appellants subject to the mortgage and including them in the foreclosure proceedings.
The other point raised is the legality of the appointment of an associate of appellee’s counsel as special master to perform the duties attendant to processing the redemption of the lots after sale. We deem this point well taken insofar as the appellants are concerned. Under Rule 3.14 (d), F.R.C.P., 31 F.S.A., it is provided that “[a]ll of the grounds of disqualification of a Circuit Judge shall apply to general and special masters.” Under F.S. 38.02, F.S.A., a circuit judge is obliged to declare himself disqualified, upon suggestion of a party or person interested in litigation pending before him, if the judge “is interested in the result” of the cause before him. The associate in the practice of law of counsel for one of the parties is certainly “interested in the result” of this mortgage foreclosure suit.
In fairness to the chancellor and to the special master, it is to be noticed that due to the extreme complexity of this case and the large number of parties involved and the extraordinary effort to do equity by providing for post sale redemption, the appointment was motivated by considerations of expediency and economy. One already familiar with the case may be expected to more readily and inexpensively perform the limited duties assigned to him, and one with such familiarity would necessarily have been participating in the case directly or indirectly as counsel. It may be that the other defendants have waived the disqualification and, if so, his performance of the duties of special master would not be invalid insofar as such other defendants are concerned.
However, as to the appellants he stands disqualified to perform as special master in any matters with which they are concerned. If there are to be further proceedings relative to redemption by the appellants of their lots in accordance with the provisions of the final decree and the stipulation of the purchaser at the sale, it will be necessary for the Court to appoint a qualified special master for that purpose or to provide for the proceedings before the chancellor without a special master.
Accordingly, this cause is affirmed in part and reversed in part, and remanded to the trial court for further proceedings not inconsistent with this opinion.
Affirmed in part and reversed in part.
SHANNON, Acting C. J., and LILES, J., concur.