466 So.2d 389 (1985)
JACKSONVILLE Shipyards, Inc., Appellant,
v.
DEPARTMENT OF NATURAL RESOURCES, Appellee.
No. AZ-334.
District Court of Appeal of Florida, First District.
March 26, 1985.
*390 Herman Ulmer, Jr., W. Sperry Lee, and J. Michael Lindell of Ulmer, Murchison, Ashby, Taylor & Corrigan, Jacksonville, for appellant.
John W. Williams, Asst. Gen. Counsel, Dept. of Natural Resources, St. Petersburg, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final order of the Florida Department of Natural Resources (DNR) denying appellant's application to the Board of Trustees of the Internal Improvement Trust Fund for the issuance of a disclaimer to 17.30 acres of submerged lands in the St. Johns River, Duval County, Florida.
Appellant filed its application for the issuance of a disclaimer to 11.15 acres of the submerged lands under Section 253.129, Florida Statutes.[1] Commodores Point Terminal Corporation filed a similar application for a disclaimer to 6.15 acres of submerged land adjoining upland adjacent to appellant's upland. The two applications requested the issuance of the disclaimers on the grounds that the submerged lands in question had been filled or developed or permanently improved prior to May 29, 1951, date of the repeal of the Butler Act.[2] Subsequent to the filing of the applications, the parcel of upland belonging to Commodores Point Terminal Corporation was conveyed outright to appellant, and DNR has treated the two applications as one.
Prior to May 29, 1951, appellant made certain structural additions to the adjacent submerged lands now in question, including piers, docks, wharves, dry docks, railroad trestles, and dredging. The facts with respect to the improvements actually situated on these submerged lands as of May 29, 1951, are not at issue here.[3]
*391 On February 21, 1984, the Governor and Cabinet met as the Board of Trustees of the Internal Improvement Trust Fund and voted to deny appellant's application. On April 16, 1984, the final order, which constituted final agency action on the application for disclaimer, was entered by the DNR evidencing the Trustees' decision. The application was denied on the ground that appellant had not "filled in" the submerged lands, action which the Board of Trustees and DNR determined was a "condition precedent" to the acquisition of title to submerged lands under the Butler Act.
After argument and upon consideration of the record and briefs, we must reverse the final order denying appellant's petition for the issuance of a disclaimer. "Filling in" is not the condition precedent to acquiring title to submerged lands under the Butler Act. Section I of the Butler Act provides, in pertinent part, as follows:
The grant herein made shall apply to and affect only those submerged lands which have been, or may be hereafter, actually bulkheaded or filled in or permanently improved. [emphasis added]
Use of the disjunctive conjunction shows the Legislature intended other methods of obtaining title to submerged lands besides "filling in." We specifically reject DNR's suggestion that the court construe "or" as "and" within the Act, and find no basis in the history of enactment or in prior decisions supporting the construction urged.
The Butler Act, adopted in 1921 to cure and replace the Riparian Act of 1856, was made effective as of December 27, 1856, the date of the prior Act.[4] Like the earlier Act,[5] the Butler Act had as its major objective the creation or evolution of commerce in connection with the ports of the State. Another purpose was to encourage upland owners to improve their waterfront property as specified in the Act.[6] In Duval Engineering and Contracting Company v. Sales, 77 So.2d 431, 433 (Fla. 1954), the Florida Supreme Court held:
It is clear that Chapter 8537, Acts of 1921, and Chapter 791, Acts of 1856, had no other purpose than to stimulate and encourage the improvement of submerged lands and to improve the foreshore in the interest of commerce and navigation. Such was the consideration for the grant and was in fact the only valid condition [sic] it could be made in view of the common law as well as the organic law of the State.
In Holland v. Ft. Pierce Financing & Construction Co., 157 Fla. 649, 27 So.2d 76, 81 (1946), the Supreme Court held:
The purpose of the Act being to encourage riparian owners to improve their water-front property as therein specified, but making the full title conditional upon the actual completion of the improvement or development mentioned in the Act. [sic] The riparian owner is restricted in the right granted by the Act in that he cannot bulkhead and fill in or otherwise improve the submerged area in front of his uplands beyond the edge of the channel, nor can he so construct the improvements mentioned in the Act as to obstruct the channel so as to interfere with navigation or to interfere with the requirements of commerce.
Despite the plain language of the Butler Act and statements from opinions construing the Act such as those quoted, supra, DNR has taken the position in the instant case, as well as in its rule,[7] that neither bulkheading nor the permanent improvement of the submerged lands are acts sufficient to vest title in the upland owner. The order sought to be reviewed determines, in accord with the contention of DNR, that the submerged lands must be "filled in" before title can vest in the upland owner. The five cases cited in support of that contention are: Duval Engineering *392 and Contracting Company v. Sales, 77 So.2d 431 (Fla. 1954); Holland v. Ft. Pierce Financing and Construction Co., 157 Fla. 649, 27 So.2d 76 (1946); Commodores Point Terminal Co. v. Hudnall, 3 F.2d 841 (S.D.Fla. 1925); Stein v. Brown Properties, 104 So.2d 495 (Fla. 1958); and Williams v. Guthrie, 102 Fla. 1047, 137 So. 682 (1931).
None of the cases cited support the contention that submerged land must be filled in before title can vest in the upland owner pursuant to the Butler Act. In Holland v. Ft. Pierce Financing and Construction Co., supra, and Commodores Point Terminal Co. v. Hudnall, supra, the submerged lands in question were filled, and the holding of those cases is stated in terms of the facts presented. In Duval Engineering, supra, the owner failed to comply with the Act, either by filling or by any permanent improvement, and did not acquire title. The opinion refers to the prior decision in the Holland v. Ft. Pierce Financing case, supra, where the submerged land was bulkheaded and filled in, and makes the statement relied on by appellees here, that the condition of the grant was for the upland owner to bulkhead and fill in the submerged lands. Appellant correctly points out that the statement from the Duval case is the court's paraphrase of the earlier Holland opinion, which in fact involved the filling in of land. In the Duval Engineering case, the court clearly recognized, however, that permanent improvement was a statutory alternative, stating the question presented in the case as follows:
What was the effect of Chapter 26776, Acts of 1951, on the rights of riparian owners acquired under Chapter 8537, Acts of 1921, Butler Bill, ... said owners not having complied with the condition of the grant by filling in or permanently improving the submerged land continuously from the high water mark in the direction of the channel. [emphasis added]
In Stein v. Brown Properties, supra, as in Duval Engineering, the submerged lands in question were neither bulkheaded, nor filled, nor permanently improved, and no title was acquired. That case was a suit for specific performance of a contract to sell a number of acres of land. The evidence showed that a sizable portion of the property was in fact submerged in the Atlantic Ocean. The State intervened in the suit, asserting title in the Trustees of the Internal Improvement Trust Fund. The court concluded: "It cannot be said that any potential or prospective right of the owner of the upland to the submerged and titled portions can be dignified as marketable title under the provisions of the contract," and concluded "no title is acquired until such submerged lands are filled in or permanently improved."[8]
Williams v. Guthrie, 102 Fla. 1047, 137 So. 682, 684 (1931), was a suit in ejectment between competing individuals, and, as stated by the court, "[t]he only issue was as to who had the better title to the dock standing on the submerged lands of the bay." Although the State was not a party to the suit, the court felt obliged to consider the effect of the Butler Act and, on rehearing, held (137 So. at 686):
The dock for which recovery was sought was not essentially such a permanent improvement of the character required by the Riparian Rights Act as to vest title in the riparian proprietor, nor was it alleged in the pleadings or proved as such by the evidence. To vest title to submerged lands in the riparian proprietor under the act, the submerged lands to which title is asserted must have been actually bulkheaded or filled in, or permanently improved... . [emphasis added]

*393 There is nothing in the declaration by way of allegation, nor is there anything in the description of the lands as described in the declaration, which brings the dock, pier, or lands sued for, within the scope and purview of the 1921 statute... .
The court dismissed the ejectment proceeding based on a failure to plead and prove any compliance with the Butler Act.
The plain language of the Butler Act provides for acquisition of title to submerged lands by bulkheading, filling, or permanently improving. The DNR Rule,[9] purporting to require that the upland owner have filled the submerged land in order for the owner to apply for disclaimer confirming title, is in derogation of the statute and therefore invalid.
The record in the instant case establishes that the improvements to the submerged lands made prior to May 29, 1951, are indeed "permanent improvements" under the Butler Act and Section 253.129, Florida Statutes (1983). Therefore, the final order is reversed and the cause is remanded for the issuance of a disclaimer under Section 253.129, Florida Statutes (1983).
SHIVERS and ZEHMER, JJ., concur.
NOTES
[1] Section 253.129, Florida Statutes (1983), confirmation of title in upland owners:

The title to all lands heretofore filled or developed is herewith confirmed in the upland owners and the Trustees shall on request issue a disclaimer to each such owner.
[2] Chapter 8537, Laws of Florida 1921, also known as the "Riparian Rights Act," provides, in part:

The State of Florida ... divests itself of all right, title and interest to all lands covered by water lying in front of any tract of land owned by the United States or by any person, natural or artificial, ... and hereby vests the full title to same, subject to said trust in and to the riparian proprietors, giving them the full right and privilege to build wharves into streams or waters of the bay or harbour as far as may be necessary to effect the purposes described, and to fill up from the shore, bank or beach as far as may be desired, not obstructing the channel, but leaving full space for the requirements of commerce, and upon lands so filled into erect warehouses, dwellings or other buildings and also the right to prevent encroachments of any other person upon all such submerged land in the direction of their lines continued to the channel by bill in chancery or at law, and to have or maintain action of trespass in any court of competent jurisdiction in the state, for any interference with such property, also confirming to the riparian proprietors all improvements which may have heretofore been made upon submerged lands.
Provided that the grant herein made shall apply to and affect only those submerged lands which have been, or may be hereafter, actually bulkheaded or filled in or permanently improved continuously from high water mark in the direction of the channel, or as near in the direction of the channel as practicable to equitably distribute the submerged lands, and shall in no wise affect such submerged lands until actually filled in or permanently improved.
[3] The record, consisting of various dated maps, plats, surveys, and photographs, reflects the improvements existing before May 29, 1951, consisted of, inter alia: a marine railway dry dock since 1885; two docks and a pier with a 30-ton, shear leg crane since 1936; 4,500-ton floating dry dock since 1905; and a 12,000-ton floating dry dock; two gantry cranes; 446.2 feet of bulkheading as early as 1936; dredging of the open waters between these piers and docks approximately every six months; three separate piers with warehouses and railroad tracks, all at least since 1946 and as early as 1909; concrete drive since 1946.
[4] 42 Fla.Jur.2d Public Lands § 108 (1983).
[5] Ruge v. Apalachicola Oyster Canning & Fish Co., 25 Fla. 656, 6 So. 489, 492 (1889).
[6] 42 Fla.Jur.2d Public Lands § 109 (1983).
[7] Section 16Q-21.14, Rules and Regulations of the Department of Natural Resources, Volume 7, Annual Cumulative Supplement to the Florida Administrative Code (1983), page 124.
[8] Hayes v. Bowman, 91 So.2d 795, 800 (Fla. 1957):

It should be noted that no title is acquired [under the Butler Act] until such submerged lands are actually filled in or permanently improved... . Before this was done, the State's offer to riparian owners for them to secure title by improving the foreshore could be withdrawn and the provisional rights then reverted to the State. Duval Engineering and Contracting Co. v. Sales, 77 So.2d 431 (Fla. 1954). [emphasis added]
[9] Section 16Q-21.14, Rules and Regulations of the Department of Natural Resources, Volume 7, Annual Cumulative Supplement to Florida Administrative Code (1983), p. 124.